**In re REGENCY, Inc.**

**Bankr. No. 7069A.**

United States District Court
D. New Jersey.
March 28, 1951.

The following is the opinion of Referee Cahill.

This matter came on for hearing before me on objections by the trustee in bankruptcy of the above named bankrupt to the claim filed by Jean G. L. Cassel van Doorn in the sum of $290,675.79 and a claim filed by his wife, Marij V. Cassel van Doorn in the sum of $8,796.35. The trustee seeks to expunge or subordinate these claims to the payment in full of other general creditors. Hearings were held on October 11, 1949, November 29, 1949 and on January 11, 1950, and extensive testimony was offered. Briefs were filed by the respective parties, and upon the evidence and the reading and consideration of the said briefs, I make the following:

Findings of Fact.

On May 15, 1941, Jean G. L. Cassel van Doorn, hereinafter referred to as Mr. Cassel van Doorn and his wife, Marij V. Cassel van Doorn caused the bankrupt, Regency, Inc., to be incorporated under the laws of the State of New Jersey. The stated purpose of said corporation was to engage in the antique business. The corporate charter permitted the buying and selling of real estate. Other than the qualifying share of stock of an attorney, Mr Cassel van Doorn and his wife were the real parties in interest in the corporation, its stockholders, officers directors and in sole control. Five hundred shares of stock of the corporation were issued for which $50,000 was paid into the corporation treasury, and the stock was issued to Mr. Cassel van Doorn and his wife, Marij. The aforesaid fund of $50,000 was used to buy a parcel of real estate in Englewood, N. J. consisting of a large residential building. The said real estate, which was the sole asset of the corporation, was located in a strictly residential area restricted by zoning law against business use. The purchase of this parcel of real estate exhausted the capital fund of the corporation. Notwithstanding this, additional land was purchased and Mr. Cassel van Doorn and his wife, Marij be-

gan to remodel, repair and alter extensively the main building. This program continued for several years at a cost in excess of $300,000. This plan obviously contemplated a luxurious residence because it included five new bath rooms, garages, servant and chauffeur quarters, maids and servants' rooms and construction essential to an elaborate residence. To carry out the plan, Mr. Cassel van Doorn and his wife, Marij, provided the funds required over a period of years until such time as it might be presumed their funds gave out. The corporation, having exhausted its treasury in acquiring the land, was merely the name by which Mr. Cassel van Doorn and his wife, Marij carried out the aforesaid plan of providing a home in accordance with what might be described as their "Expensive tastes". Now, no attempt was ever made to satisfy the aforesaid advances by the Cassel van Doorns until the corporation was faced with financial difficulties.

Regency, Inc., the bankrupt herein, had entered into a contract with John S. Westervelt's Sons, whereby the said contractor was to do repair work and make alterations upon a portion of the building in question. In November, 1943, this contractor, John S. Westervelt's Sons, instituted a suit to recover the monies due on its contract with Regency, Inc., the bankrupt, which resulted in a judgment being rendered in the New Jersey State Court in favor of the contractor, John S. Westervelt's Sons, in the sum of $23,000, which judgment was entered on February 16, 1948. While this suit was pending and on January 21, 1945, a corporation meeting was held, attended and controlled by Mr. Cassel van Doorn and his wife, Marij. At this meeting, the large sums of money advanced towards the construction work by Mr. Cassel van Doorn and his wife, Marij was established and recognized as a corporate obligation to the extent of $290,000 and the real estate in the corporation name, being the sole asset, was conveyed by the corporation to Mr. Cassel van Doorn. No previous effort to satisfy these advances was ever made and it was advanced that the transfer was not made in good faith.

This conveyance was subsequently set aside by the Court in an action instituted by the judgment creditor in which the trustee in bankruptcy of Regency, Inc. was joined as a party, John S. Westervelt's Sons v. Regency, Inc., 1 N.J.Super. 466, 63 A.2d 818. The Court concluded on motion for summary judgment, that the conveyance was made in contemplation of insolvency in contravention of the N.J.R.S. 14:14–2, N.J.S.A.

The claims under attack are for advances over a period years of Mr. Cassel van Doorn and his wife, Marij, in furthering the construction work.

No issues relevant to the matter in controversy before me were argued or decided in the State Court decision, so the question of res adjudicata is not involved. Heiser v. Woodruff, 1946, 327 U.S. 726, 66 S.Ct. 853, 90 L.Ed. 970.

## Conclusion.

I conclude that the claims filed in these proceedings by Mr. Cassel van Doorn and his wife, Marij should be subordinated to the prior payments of claims of other general creditors of the bankrupt as a matter of equity and fair play under the reasoning of the U. S. Supreme Court, Pepper v. Litton, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281. My conclusion is not based on the existence or non-existence of the debts due Mr. Cassel van Doorn and his wife, Marij, but rather on equitable principles which call for such subordination. The capital of the corporation was nominal compared to the expensive alterations and additions to the home. The magnitude of the work carried out obviously required money substantially beyond the capital of the corporation. The sole beneficiary of this work and expenditure could only have been Mr. Cassel van Doorn and his wife, because the corporation never engaged in any business, other than an attempt to build a personal residence for its principles. Mr. Cassel van Doorn and his wife, Marij, as the dominating parties in control of the corporation could have benefitted only by the disbursement of the money and therefore, the same must be classified as capital contributions in order to meet with the principles of

equity and good conscience. For Mr. Cassel van Doorn and his wife to make such large expenditures over a period of years without question and then use the sum total of these expenditures as a wedge against the payment of legitimate creditors when the corporation became financially disabled would pervert all sense of fair play and conscience under the facts herein presented.

I am satisfied beyond any doubt that if the funds of Mr. and Mrs. Cassel van Doorn had not run out, they would have completed their buildings by paying all material men and labor and they would never have exerted any claim against the corporation.

Therefore, counsel will present an order in accordance with the foregoing findings of fact and conclusions, subordinating the claims of Jean G. L. Cassel van Doorn and Marij V. Cassel van Doorn to the payment in full of the other creditors in this estate.

William Henig, Hackensack, N. J., trustee, pro. se.

L. Stanley Ford, Hackensack, N. J., for trustee.

Eichmann & Seiden, Jersey City, N. J., by Julius J. Seiden, Jersey City, N. J., for claimants.

Abraham H. Sles, Jersey City, N. J., for bankrupt.

FAKE, District Judge.

Upon consideration of the evidence adduced before the referee in the above-entitled matter, the briefs submitted by counsel, and the reasoning set forth in the referee's report, I am firmly convinced that the referee was justified in entering the order dated May 9, 1950, which provides as follows: " * * * it is ordered that the said claim of Jean G. L. Cassel van Doorn and the said claim of Marij V. Cassel van Doorn be and the same are hereby subordinated to the payment in full of all other creditors whose claims are or may be allowed in the above estate, and that said claims, as so subordinated, are hereby allowed."

I do not deem it necessary to enter an extended opinion here because the cases of Pepper v. Litton, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281, and Heiser v. Woodruff, 327 U.S. 726, 66 S.Ct. 853, 90 L.Ed. 970, when coupled with the memorandum of the referee are sufficient. Anything more would tend to unnecessarily encumber the record.

An order will be entered affirming the referee.